RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 9/26/14

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DARREN D. SHIVERS,<br>    Plaintiff | CIVIL ACTION<br>1:13-CV-02406 |
| VERSUS | |
| C.O. LARD, et al.,<br>    Defendants | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983 and state law, in forma pauperis, by pro se plaintiff Darren D. Shivers ("Shivers") on July 31, 2013 and amended on December 3, 2013 (Doc. 12). The named defendants are Martrevious Lard,[1] Thomas McDonald, and Marlan Moss, all employed at the Winn Correctional Center ("WCC") in Winnfield, Louisiana in 2013, and Corrections Corporation of America ("CCA"), the operator of WCC (Doc. 1).[2] Shivers contends that, in January 2013, while he was confined in the WCC, defendants failed to protect him from an attack by another inmate, Travon Ward Shivers also alleges supplemental state law claims for negligence against the defendants. For relief, Shivers asks for a jury trial and general and punitive damages (Doc. 1).

---

[1] The two named defendants, C.O. Lard and Martrevious Lard, are the same person.

[2] Other defendants were named (Pam Horn, Mona Heyse, Brenda Smiley) but have been dismissed (Doc. 21).

The Corrections Corporation of America was never served. Shivers never completed a summons for this defendant and no attempt was ever made to effect service. Accordingly, it will be recommended that the complaint against this defendant be dismissed without prejudice under Fed.R.Civ.P. 4(m). See <u>McGinnis v. Shalala</u>, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191, 114 S.Ct. 1293, 127 L.Ed.2d 647 (1994); <u>Systems Signs Supplies v. U.S. Dept. of Justice</u>, 903 F.2d 1011, 1013 (5th Cir. 1990); <u>Kersh v. Derosier</u>, 851 F.2d 1509, 1512 (5th Cir. 1988).

McDonald answered the complaints (Doc. 33). Shivers filed a motion for summary judgment (Doc. 41), and McDonald filed a cross-motion for summary judgment (Doc. 52). McDonald and Lard then answered the complaints (Docs. 51, 53), but did not oppose Shivers' motion for summary judgment.

The cross-motions for summary judgment are now before the court for disposition.

Law and Analysis

<u>Summary Judgment</u>

Rule 56 of the Federal Rules of Civil Procedure mandates that the court shall grant a summary judgment:

> "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Paragraph (e) of Rule 56 also provides the following:

> "If a party fails to properly support an assertion of fact or fails to properly address another party's

assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order."

Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted for purposes of a motion for summary judgment unless the opposing party controverts those facts by filing a short and concise statement of material facts as to which that party contends there exists a genuine issue to be tried.

In this regard, the substantive law determines what facts are "material." A material fact issue exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to preclude summary judgment; there must be evidence on which the jury could reasonably find for the plaintiff. Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), 528 U.S. 906, 120 S.Ct. 249 (1999), and cases cited therein.

If the movant produces evidence tending to show that there is no genuine issue of material fact, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for

trial. In this analysis, we review the facts and draw all inferences most favorable to the nonmovant. <u>Herrera v. Millsap</u>, 862 F.2d 1157, 1159 (5th Cir. 1989). However, mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment. <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir.), cert. den., 506 U.S. 825, 113 S.Ct. 82 (1992).

<u>Shivers' Allegations</u>

Shivers alleges that, on January 7, 2013, Unit Manager Pam Horn ordered that Ward be placed in Shivers' cell. Shivers alleges that he told C.O. Lard that he and Ward should not be in the same cell because they could not get along, but when C.O. Lard reported that, Lt. McDonald said Shivers and Ward had to share a cell. Shivers alleges that C.O. Lard then escorted Inmate Ward into the cell, Inmate Ward said he was going to fight with Shivers, and Ward struck Shivers (Doc. 1). Shivers alleges that he defended himself while C.O. Lard watched and did not attempt to stop the fight (Doc. 1). Shivers contends that C.O. Moss and Lt. McDonald then entered the tier and stopped the fight (Doc. 1). Shivers alleges that, on January 8, 2013, C.O. Moss apologized to him, stating that he did not know that he was not supposed to have opened the cell door to Inmate Ward (Doc. 1).

Shivers contends that, as a result of the attack, he had severe headaches, both of his lips were cut, he had bleeding at the

back of his right eye, and has some vision loss in his right eye (Doc. 1).

Inmate Safety

The Eighth Amendment imposes duties on prison officials to provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates. Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). In particular, prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Being violently assaulted in prison is simply not a part of the penalty that criminal offenders pay for their offenses against society. Farmer, 114 S.Ct. at 1976-77.

For an inmate to succeed on a claim based on a failure to prevent harm, he must show that (1) he was incarcerated under conditions posing a substantial risk of serious harm, and (2) the prison official was "deliberately indifferent" to his health or safety. Failing to act with deliberate indifference to a substantial risk of harm is the equivalent of recklessly disregarding that risk. Farmer, 114 S.Ct. at 1978. Deliberate indifference is a subjective test and it must be shown that the official actually knew of the risk of harm to the inmate. It is insufficient to show solely that the official should have known of the risk. The official must be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference. Farmer, 114 S.Ct. at 1979.

Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence. A fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. It remains open to an official to prove that he was unaware of even an obvious risk to inmate health and safety. Farmer, 114 S.Ct. at 1981-82. Also, Hinojosa v. Johnson, 277 Fed.Appx. 370, 374 (5th Cir. 2008). However, a prison official who actually knew of a substantial risk to inmate health and safety may be found free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 114 S.Ct. at 1982-83.

Liability of McDonald

Shivers named Lt. McDonald as a defendant in this case in his capacity as a supervisor and for failing to prevent C.O. Lard from placing Ward in his cell after C.O. Lard told him that Shivers and Ward did not get along.

The doctrine of respondeat superior, which makes an employer or supervisor liable for an employee's alleged tort, is unavailable in suits under 42 U.S.C. §1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). Well settled §1983 jurisprudence establishes

that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injury. Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992), cert. den., 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993); Thompkins, 828 F.2d at 303.

Shivers has not alleged or offered any proof of any unconstitutional policies implemented by McDonald, which have deprived Shivers of his constitutional rights.

Shivers alleges that C.O. Lard told McDonald that Ward and Shivers did not get along, and that McDonald did not do anything about it (Doc. 64). McDonald states in his affidavit that he had not been told by anyone that Shivers and Ward had a problem with sharing a cell (Doc. 52), although C.O. Lard's incident report states that Lard had told Lt. McDonald there were complications with moving Ward into Shivers' cell, but that McDonald said to move them anyway because they could not have what they wanted (Doc. 64). McDonald states in his affidavit that he saw C.O. Moss start running and followed him, arriving in time to see inmate Shivers jump into the doorway of his cell and state that Ward was not going to enter, then Ward struck Shivers with his fist (Doc. 52). McDonald states that he then ordered Shivers and Ward to stop

fighting and they complied (Doc. 52).

Horn's incident statement shows that neither Shivers nor Ward had listed any enemies which would have alerted the prison officials to potential problems between Shivers and Ward (Doc. 64).

Shivers has not alleged or shown that McDonald was aware that Ward was a threat to Shiver's safety. As Horn's statement shows, neither Shivers nor Horn listed any enemies. Although McDonald may have just been told that they objected to sharing a cell, Shivers has not shown that McDonald knew Shivers and Ward would immediately start a physical altercation. Shivers has not carried his burden of proving that McDonald was deliberately indifferent to his safety.

Therefore, McDonald's motion for summary judgment should be granted and Shivers' motion for summary judgment against McDonald should be denied.

<u>Liability of Moss</u>

Shivers contends that C.O. Moss is liable to him because he opened Shivers' cell door in error. Shivers contends that C.O. Moss opened his cell door to Ward, and later admitted to Shivers he had erred because he did not know he was not supposed to have opened the door (Doc. 1).

Shivers' allegations show that Moss made a mistake and was unaware he was not supposed to open the door. Shivers has not alleged or shown that Moss knew that Ward was going to attack

Shivers, or that Moss was deliberately indifferent to Shivers' safety.

Since Shivers has not alleged or shown that Moss was deliberately indifferent to Shivers' safety, Shivers' motion for summary judgment should be denied. In addition, the Court, on its own motion, should grant a summary judgment in favor of Moss.

<u>Liability of Lard</u>

Shivers contends the C.O. Lard is liable to him because he did not protect him and stop Ward's attack, even though he heard Ward say they were going to fight.

Shivers contends that he told C.O. Lard that he and Ward did not get along, and Lard informed his supervisors of the situation. C.O. Lard's incident report states that Lard told Lt. McDonald there were complications with moving Ward into Shivers' cell, but that McDonald said they do not get what they want and to move them anyway (Doc. 64). Shivers also contends that Lard heard Ward state that he and Shivers were going to fight, and saw Ward strike Shivers (Doc. 1).

McDonald states in his affidavit (Doc. 52) and Lard states in his incident report (Doc. 64) that inmate Shivers jumped into the doorway of his cell and said that Ward was not going to enter, then Ward struck Shivers with his fist. McDonald also states in his affidavit that he immediately ordered Shivers and Ward to stop fighting and they complied (Doc. 52).

9

Shivers complains that C.O. Lard did not intervene to stop the fight. However, according to McDonald's affidavit, McDonald saw the fight start and immediately ordered the inmates to stop, and they complied (Doc. 64). Therefore, it was not necessary for Lard to intervene in the fight. Shivers has not shown that Lard merely stood by while no one else did anything to stop the fight.

Since Shivers has not alleged or shown that Lard was deliberately indifferent to his safety, Shivers' motion for summary judgment against Lard should be denied. In addition, the Court, on its own motion, should grant a summary judgment in favor of Moss.

Supplemental State Law Claim

Shivers also alleged a supplemental state law claim against the defendants for negligently failing to protect him from assault by another inmate.

To prevail on a negligence claim under Louisiana Civil Code articles 2315 and 2316, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element).

Brown v. Lee, 94-104 (La.App. 5 Cir. 7/13/94), 639 So.2d 897, 898-899, writ den., 94-2127 (La. 11/18/94), 646 So.2d 378, citing Roberts v. Benoit, 605 So.2d 1032 (La. 1992); Fowler v. Roberts, 556 So.2d 1, 4 (La. 1989).

The existence of a legal duty and a breach of that duty are prerequisites to any determination of fault. Seals v. Morris, 210 So.2d 715, 718 (La. 1981). An officer owes a duty to a prisoner to protect him from harm and to preserve his safety. The officer must do what is reasonable under the circumstances. Brown, 639 So.2d at 897-899, and cases cited therein.

As already stated, defendants owed a duty to protect Shivers from assaults by other inmates. Also for the reasons already stated above, the defendants did not breach that duty by failing to prevent the fight. They did not know in advance that Shivers would try to block Ward's entrance into his cell and that Shivers and Ward would start a physical altercation. Therefore, defendants were not negligent in failing to prevent the fight. Also, since the fight was stopped as soon as it started, defendants were not negligent in that respect, either.

Therefore, Shivers' motion for summary judgment should be denied on this issue. Since there are no genuine issues of material fact which would preclude a summary judgment in favor of defendants, McDonald's motion for summary judgment should be granted and the court, on its own motion, should grant summary

judgment in favor of Moss and Lard on Shivers' supplemental state law claim for negligence.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Shivers' motion for summary judgment (Doc. 41) BE DENIED as to all defendants.

IT IS FURTHER RECOMMENDED that McDonald's motion for summary judgment (Doc. 52) be GRANTED and that Shivers' action against McDonald be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that the Court, on its own motion, GRANT a summary judgment in favor of Lard and Moss, also.

IT IS FURTHER RECOMMENDED that Shivers' complaint against the Corrections Corporation of America be DISMISSED WITHOUT PREJUDICE pursuant to Fed.R.Civ.P. rule 4(m), due to plaintiff's failure to effect service.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the

district judge before making a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 26th day of September 2014.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE